IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW MCCAIN, #R21553, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-00968-NJR |
| ) | |
| KIMBERLY BUTLER, ) | |
| KENT BROOKMAN, TIMOTHY VEATH, ) | |
| JUAN BERNARD, MR. JONES, ) | |
| MICHAEL KEYS, JASON HART, ) | |
| ROSE COWAN, SHANE GREGSON, ) | |
| KEVIN HELD, MICHAEL SCHNICKER, ) | |
| JASON LANE, RICHARD HARRINGTON, ) | |
| MS. CLENDENIN, MORGAN TEAS, and ) | |
| LORI OAKLEY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Matthew McCain, an inmate currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this *pro se* civil rights action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The alleged constitutional violations occurred while Plaintiff was housed at Menard Correctional Center ("Menard").

The complaint comes now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

All of the events giving rise to Plaintiff's claims occurred while Plaintiff was confined at Menard Correctional Center. Plaintiff generally alleges that after he filed a lawsuit against correctional staff at Menard in 2013, *see McCain v. Herring, et al.,* Case No. 13-cv-300-JPG (S.D. Ill.), some of the named Defendants in the present complaint retaliated by writing him up for bogus disciplinary infractions. Plaintiff asserts that he was denied a fair disciplinary hearing on each of the disciplinary tickets. Plaintiff also alleges that some of the Defendants impeded his ability to access the courts.

Plaintiff describes a cycle of retaliatory actions that began in early September 2013 when Defendant Schnicker, a correctional officer, wrote a falsified disciplinary ticket against Plaintiff claiming Plaintiff had threatened him with physical harm (referred to herein as the "September 2013 ticket"). (Doc. 1, p. 28). Plaintiff alleges that the ticket was intended to retaliate against Plaintiff for filing a lawsuit against Schnicker's co-workers. On September 10, 2013, Plaintiff had a disciplinary hearing before the adjustment committee. *Id*. When Defendant Schnicker saw Plaintiff he said, "What's up homo?" Plaintiff responded, "See, that's harassment" to which Schnicker replied, "What did you say faggot?" *Id*. Defendant Veath, one of the hearing officers, then remarked that Plaintiff should have thought before he named a "Cowan" as a defendant in his lawsuit because "there's like 900 of them down here." *Id*. Plaintiff contends that he was not allowed to question any witnesses, although one of his witnesses testified that Defendant Schnicker was "messing with" Plaintiff even though Plaintiff had not done anything. *Id*. Despite this testimony, Defendant Veath found Plaintiff guilty of threatening a staff member with physical harm and sentenced him to the maximum penalty. *Id*. at 29. Plaintiff does not specify what the maximum penalty for this type of infraction is.

Over a year later, in late October 2014, there was a major shakedown of Plaintiff's housing unit at Menard. *Id*. at 13. Following the shakedown, Plaintiff learned that Defendant Lane, a correctional officer, wrote Plaintiff a disciplinary ticket claiming that Plaintiff had stolen two rolls of trash bags (referred to herein as the "October 2014 ticket"). *Id*. In the disciplinary report, Lane claimed that he witnessed Plaintiff pull two rolls of trash bags out from underneath his clothes. Lane also claimed that he had asked to see Plaintiff's identification card to verify Plaintiff's identification. A few days later, Plaintiff appeared before the adjustment committee, which consisted of Defendants Brookman and Hart. Plaintiff asserts that he had witnesses that

could testify to "being right beside Plaintiff, and seeing no bags, nor any staff member stop or question Plaintiff during the mass shakedown," but that he was not allowed to call them. *Id*. at 14. In addition, Plaintiff wanted to present video footage that was taken by Internal Affairs during the shakedown that he believed would exonerate him; but the adjustment committee refused to consider any such evidence. *Id*. Instead, Defendant Brookman simply concluded, "I have to go with my officer." *Id*. When Plaintiff inquired about offering witness testimony, Brookman said that he had already talked to them and told Plaintiff to leave. Plaintiff was never given the opportunity to learn what his witnesses had allegedly testified to, and in fact, he later learned that the witnesses were not questioned until after the disciplinary hearing. *Id*. at 15. Plaintiff was convicted of the theft charge and sentenced to 90 days in segregation.

After spending 28 days in segregation, Plaintiff received a reduction in his segregation time, even though he had made no such request, and according to department regulations, he was not eligible for such a cut. *Id*. Plaintiff believes this was an attempt by Defendant Brookman to appease Plaintiff since four days earlier Plaintiff had filed a grievance regarding Defendant Brookman's conduct at his disciplinary hearing. *Id*. Defendant Butler, warden of Menard, approved the adjustment committee's recommendation on the theft charge and later denied Plaintiff's grievance that the adjustment committee had not given him a chance to present witnesses or video evidence.

A few months later, on February 2, 2015, Defendant Teas, a Menard paralegal, wrote Plaintiff a disciplinary ticket for damage and misuse of property (referred to herein as the "February 2015 ticket"). *Id*. at 16. Teas claimed that she had a conversation with Plaintiff about an overdue library book that was missing. Plaintiff denies having had this conversation. Plaintiff contends that Defendant Teas issued Plaintiff the disciplinary ticket to retaliate against him for

filing grievances against law library staff. *Id.* at 34.

At his disciplinary hearing the following week, Plaintiff appeared before Defendants Brookman and Keys. *Id*. During the hearing, Plaintiff explained that when he was sent to segregation, all of his property was confiscated and inventoried by the property department, and that when he was released from segregation, the library book was no longer in with the rest of his property. *Id*. at 17. Plaintiff argued that the property department removes any property that they believe an inmate is not allowed to have while in segregation and that inmates have no control over what is done with their property while they are in segregation. During the course of the hearing, Defendant Keys asked Plaintiff if Plaintiff remembered him. *Id*. Plaintiff said he did not. Keys told Plaintiff that he had maced Plaintiff a few years back and that Plaintiff looked like an "umpa lumpa." Defendants Brookman and Keys then proceeded to laugh at Plaintiff and fine him $15.00 for the missing book. *Id*. Defendant Butler approved this disciplinary action and later denied Plaintiff's grievance regarding the incident. *Id*. at 18.

The final incidents pertain to Plaintiff's attempts to file various legal documents in *McCain v. Herring*, Case No. 13-cv-00300-JPG, the lawsuit that Plaintiff contends set in motion the series of retaliatory actions taken by Defendants. On March 2, 2015, Plaintiff received notice that he had a deadline in 30 days in a pending lawsuit. He notified several Defendants regarding the upcoming deadline and requested help obtaining legal supplies. *Id*. at 18. Despite his repeated requests, he received no assistance. *Id*. Plaintiff also asked several Defendants to pick up his legal work so that it could be submitted by the deadline set by the court, but he met significant resistance because it turned out that Plaintiff had not been placed on any deadline list. Finally, on March 30, 2015, Defendant Gregson picked up Plaintiff's legal materials, but made Plaintiff provide proof that he had notified the law library of the upcoming deadline. *Id*. at 20.

A couple of weeks later, on April 13, 2015, Plaintiff gave library staff a legal document to be filed in the same pending lawsuit, *McCain v. Herring*, Case No. 13-cv-00300-JPG. The document requested an extension on an upcoming deadline and explained that the delays he had experienced were caused by Defendants Clendenin and Gregson. *Id*. Forty-five minutes later, Plaintiff's request to make copies of legal documents pertaining to another upcoming deadline in his pending lawsuit was denied. Plaintiff contends that he was prevented from filing a complete and thorough supplemental brief in *McCain v. Herring* because of the actions of law library staff, namely Defendants Clendenin and Gregson.

Later that same day, while attempting to get assistance from a law library clerk, Defendant Gregson wrote Plaintiff a disciplinary ticket for being out of his seat. Plaintiff claims that he had been given permission to leave his seat so he could seek assistance with getting copies made of his legal documents. *Id*. at 25. Plaintiff then received a second disciplinary ticket from Defendant Held for complaining about the ticket Defendant Gregson issued and asking Defendant Held to intervene (both tickets issued that day will be referred to as "April 2015 tickets"). Plaintiff contends that both tickets were intended to retaliate against Plaintiff for complaining about the conduct of library staff.

A few days later, Plaintiff appeared before the adjustment committee, which consisted of Defendants Brookman and Jones. *Id*. at 26. Plaintiff requested a different hearing officer than Defendant Brookman, whom he had recently filed a grievance against. Defendant Brookman told Plaintiff to shut up before he pissed him off. Brookman then refused to consider Plaintiff's evidence regarding the retaliatory nature of the disciplinary tickets he was issued and told Plaintiff that he would be going to segregation for a while. *Id*. Plaintiff later learned that Defendants Brookman and Bernard found Plaintiff guilty on the charges and recommended nine

months segregation on the day before the disciplinary hearing was even held. *Id*. Defendant Bernard was not even present at Plaintiff's hearing before the adjustment committee. A few days later, Plaintiff filed a grievance complaining again that he was denied a fair hearing because of Defendant Brookman's inability to be an impartial hearing officer. *Id*. at 27. Defendant Oakley denied Plaintiff's grievance.

In addition to damages, Plaintiff seeks injunctive relief in the form of removal from segregation and a permanent transfer out of Menard. *Id*. at 37.

## Analysis

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:** **Retaliation claims against Defendants Schnicker, Teas, Gregson, Held, Lane, Butler, and Harrington for issuing or condoning false disciplinary tickets against Plaintiff in an attempt to retaliate against Plaintiff for filing lawsuits, grievances, and generally complaining about the conduct of correctional staff.**

Prisoners have a First Amendment right to free speech, *see Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977); *Martin v. Brewer,* 830 F.2d 76, 77 (7th Cir. 1987), and restrictions on that right will be upheld only if they are "reasonably related to legitimate penological interests," *see Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989) (citing *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *Massey v. Wheeler,* 221 F.3d 1030, 1035 (7th Cir. 2000). Further, prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See*

*Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing lawsuit); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (retaliation for filing suit).

"A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman,* 226 F.3d at 573 (citation omitted). In his complaint, Plaintiff alleges that three of the disciplinary tickets discussed above were issued with the intent to retaliate against Plaintiff: the September 2103 ticket, the October 2014 ticket, and the April 2015 tickets. As to Defendants Schnicker, Teas, Gregson, and Held, Plaintiff has sufficiently set forth facts from which one could plausibly be inferred that Defendants retaliated against Plaintiff when he exercised his First Amendment right to free speech. As such, Plaintiff shall be allowed to proceed on Count 1 against Defendants Schnicker, Teas, Gregson, and Held.

Plaintiff also seeks to hold Defendants Butler and Harrington (warden and former warden at Menard) liable for condoning the actions of staff that retaliated against Plaintiff for exercising his First Amendment right to access the courts to seek legal redress for constitutional violations. The doctrine of respondeat superior does not apply to § 1983 actions; in order to be liable a defendant must be alleged to be personally responsible for the constitutional violation. *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). But where a defendant, as in this case, has been alleged to have condoned the conduct which caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation. *Chavez*, 251 F.3d at 652; *McPhaul v. Bd. of Comm'rs of*

*Madison Cnty.,* 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may then be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")). Plaintiff alleges that he notified Defendants Butler and Harrington on multiple occasions regarding the retaliatory conduct of correctional staff and that Defendants Butler and Harrington not only failed to take action, but actually denied any wrongdoing on the part of their employees. Whether this is in fact true cannot be determined at this stage. Plaintiff may, therefore, proceed on Count 1 against Defendants Butler and Harrington as well.

Lastly, Plaintiff claims that he is "suspicious" that Defendant Lane retaliated against him when he wrote Plaintiff a disciplinary ticket that Plaintiff maintains was patently false. Plaintiff states, "I wish to include him to see what evidence [there] is" but he concedes that Defendant Lane might have simply made a mistake regarding Plaintiff's identity. *Id.* at 35. But a suspicion or hunch is not enough to state a claim of retaliation. Plaintiff's retaliation claim against Defendant Lane, therefore, shall be dismissed (but without prejudice).

**Count 2: Due process claims against Defendants Brookman, Bernard, Veath, Hart, Keys, Jones, Oakley, and Cowan for participating in or condoning disciplinary proceedings that deprived Plaintiff of his rights under the Fourteenth Amendment.**

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court reviewing a due process claim must, therefore, engage in a two-part inquiry: 1) was there a protected interest at stake that necessitated the protections demanded by due process; and 2) was

the disciplinary hearing process conducted in accordance with procedural due process requirements?

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Here, Plaintiff claims that Defendants denied him due process of law at each of his disciplinary hearings by denying him a fair hearing in accordance with the standards set forth under *Wolff*. Plaintiff has alleged facts suggesting that he may have been denied the opportunity to call witnesses and that the hearing officers, particularly Defendant Brookman, were not impartial. The question then is whether there was a protected liberty or property interest at stake. The Court will consider the interest at stake in each hearing to determine whether Plaintiff has sufficiently stated a due process claim.

**<u>Disciplinary Hearing on September 2013 Ticket</u>**

Plaintiff claims that Defendant Veath and Cowan violated his due process rights when Veath refused to question two witnesses at Plaintiff's disciplinary hearing. Whether the procedures employed violated due process need not be considered here because Plaintiff has failed to plead that a protected interest was at stake. Plaintiff states that he was sentenced to the "maximum penalty" for threatening a correctional officer, but he fails to specify the length of his segregated confinement. Moreover, he says nothing about the conditions of his confinement in segregation that would suggest he was subjected to particularly egregious conditions.

A prison has the discretion to keep its inmates "in a range of custodial conditions without infringing upon a prisoner's liberty or property interests." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). This is because imprisonment necessarily involves the "limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). To state a claim that a protected liberty interest was at stake, an inmate must allege that his or her disciplinary confinement imposed an "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit has noted that "a liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Correction Inst.,* 559 F.3d at 697-98 (7th Cir. 2009) (collecting cases). The complaint, as currently drafted, fails to address the duration or conditions of Plaintiff's confinement following Plaintiff's disciplinary hearing on the September 2013 ticket. Consequently, Plaintiff has failed to state a due process claim against either Defendant Veath or Cowan. As such, Defendants Veath and Cowan shall be dismissed, but without prejudice to Plaintiff filing an amended complaint that states sufficiently states a due process claim against these two Defendants.

**<u>Disciplinary Hearing on October 2014 Ticket</u>**

Plaintiff further alleges that Defendants Brookman and Hart violated his due process rights when they denied him the opportunity to call witnesses and present evidence in his favor at his disciplinary hearing. He further contends that Defendant Butler (present warden at Menard) violated his rights when she approved the findings of the Adjustment Committee and denied a grievance filed by Plaintiff regarding the alleged due process violations. Plaintiff was sentenced to 90 days in segregation, but ultimately only served 28 days. Plaintiff, again, makes no mention

of the conditions of his confinement.

As discussed above, inmates, generally, have a limited liberty interest in avoiding segregation, particularly when it is of such short duration. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). In *Sandin,* the Supreme Court found that a thirty-day assignment to segregated confinement did not implicate a liberty interest under the Due Process Clause because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Sandin,* 515 U.S. at 485. *See also, Hoskins v. Lenear,* 395 F.3d 372, 374–75 (7th Cir.2005) (holding that a 60 day punishment consisting of a demotion in status, segregation and transfer raised no due process concerns). At this point, Plaintiff has failed to allege that the duration or the conditions of his confinement in segregation following his conviction on the October 2014 Ticket were so harsh that he was deprived of a protected liberty interest. Therefore, Plaintiff's claims against Defendants Brookman, Hart, and Butler shall be dismissed. This dismissal shall also be without prejudice to Plaintiff filing an amended complaint that sufficiently states a due process claim.

**Disciplinary Hearing on February 2015 Ticket**

Plaintiff alleges that Defendants Brookman and Keys violated his right to due process because they were not impartial and they found him guilty despite their being no evidence to support such a finding. He further contends that Defendant Butler participated in the due process violation when she condoned the actions taken by Brookman and Keys. Plaintiff was fined $15.00 for the loss/theft of a library book.

Here, the imposition of a fine arguably deprived Plaintiff of a protected property interest. *See Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 571–73 (1972) (noting that the "law is clear that individuals have a property interest in their own money.") In addition to the factors set

forth in *Wolff*, including the right to an impartial decision maker, the Supreme Court has held that due process requires that the findings of a disciplinary tribunal be supported by *some* evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999). Accepting Plaintiff's allegations as true, as the Court must do at this state, the Court finds that Plaintiff has stated a due process claim against Defendants Brookman, Keys, and Butler.

**Disciplinary Hearing on April 2015 Tickets**

Finally, Plaintiff contends that Defendants Brookman, Jones, and Bernard violated his right to due process when they failed to hold a disciplinary hearing in compliance with the standards set forth in *Wolff*. In addition, Plaintiff maintains that Defendant Oakley and Butler further violated his due process rights when they denied Plaintiff's grievance complaining that Brookman was not impartial at his hearing simply on the basis that Brookman said he was impartial. During the hearing, Plaintiff requested a different hearing officer, but was told by Defendant Brookman to shut up before he pissed him off. Defendants Brookman and Jones then refused to hear Plaintiff's evidence regarding the retaliatory nature of the disciplinary tickets and sentenced him to nine months in segregation. Plaintiff later learned that Defendants Brookman and Bernard had made the determination to send Plaintiff to segregation before the disciplinary hearing was even held.

In *Marion*, the Seventh Circuit concluded that a term of 240 days of segregation *may* implicate liberty interests and remanded the case for further scrutiny of the actual conditions of confinement. *Marion v. Columbia Correction Inst.,* 559 F.3d at 698-99 (7th Cir. 2009). *Marion* further noted, "Our decision that Mr. Marion's complaint states a claim is consistent with the decisions of our sister circuits. Indeed, other courts of appeals have held that periods of

confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions." *Id.*

Again, Plaintiff provides no details regarding the conditions of his confinement in segregation. But the duration of his sentence – nine months – calls for a more searching inquiry into the conditions that he endured to determine whether a cognizable liberty interest was at stake. Therefore, dismissal of Plaintiff's due process claims against Defendants Brookman, Jones, Bernard, Oakley, and Butler would be inappropriate at this stage. Plaintiff may proceed on this claim against these individuals.

**Count 3:  Access to courts claim against Defendants Clendenin, Butler, and Gregson for interfering with Plaintiff's ability to access the courts by denying him adequate writing supplies and refusing to assist Plaintiff with regard to upcoming legal deadlines.**

Prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). Without a right of access to the courts, all other rights an inmate may possess are illusory, being "entirely dependent for their existence on the whim or caprice of the prison warden." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Adams v. Carlson,* 488 F.2d 619, 630 (7th Cir.1973)); *DeMallory v. Cullen,* 855 F.2d 442, 446 (7th Cir.1988).

The right to access the courts is violated when a prisoner is deprived of such access and suffers actual injury as a result. *Lewis v. Casey,* 518 U.S. 343, 350 (1996). To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010).

Here, Plaintiff claims that the named Defendants denied him adequate writing supplies and refused to assist him with a lawsuit he filed regarding the conditions of his confinement at

Menard. For example, Plaintiff alleges that the law library Defendants failed to place him on the legal deadline list, which delayed his filings in his pending lawsuit. He further contends that Defendants' failure to make copies of certain legal documents prevented him from filing a robust legal brief. But Plaintiff fails to allege that any of this ultimately caused him to suffer an actual injury in his pending lawsuit. A delay becomes an injury only if it results in "actual substantial prejudice to specific litigation." *Gentry v. Duckworth,* 65 F.3d 555, 559 (7th Cir.1995). Further, a general allegation of prejudice, without more, is insufficient to state an access to courts claim. *See Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003). Since Plaintiff has failed to allege that he suffered an actual injury, this claim shall be dismissed without prejudice.

### Pending Motions

The Court previously denied Plaintiff's motion for temporary restraining order (Doc. 5), but Plaintiff's motion for preliminary injunction (Doc. 3) remains pending. In Plaintiff's prayer for relief, he requests release from segregation and a permanent transfer out of Menard. (Doc. 1, p. 37). Since filing this complaint, Plaintiff has been transferred to Pontiac, but it is unclear whether he remains in segregation there. (Doc. 6). Therefore, the motion for preliminary injunction shall be referred to United States Magistrate Judge Wilkerson and addressed in a separate order.

In addition, Plaintiff's motion to proceed *in forma pauperis* (Doc. 2) remains pending and shall be addressed in a separate order.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff may proceed on his retaliation claims under **COUNT 1** against Defendants **SCHNICKER, TEAS, GREGSON, HELD, BUTLER,** and **HARRINGTON**.

**IT IS FURTHER ORDERED** that Plaintiff may proceed on **COUNT 2**, the due process claim, against Defendants **BROOKMAN, KEYS, JONES, BERNARD, OAKLEY,** and **BUTLER**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED** without prejudice; and Defendants **LANE, VEATH, HART, COWAN**, and **CLENDENIN** are **DISMISSED** without prejudice**.**

The Clerk of Court shall prepare for Defendants **SCHNICKER, TEAS, GREGSON, HELD, BUTLER, HARRINGTON, BROOKMAN, KEYS, JONES, BERNARD,** and **OAKLEY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings, which shall include a determination on the pending motion for preliminary injunction (Doc. 2).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  October 14, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**